### J. R. RABY ET AL. v. FRANK, HERMAN & CO.

#### No. 995.

1. **Sale—Rescission by Vendor for Fraud—Receiving Part Payment—Ratification.**

   A vendor of goods the sale of which had been procured through fraud of the vendee, upon discovering the fraud, reclaimed such of the goods as remained unsold by the vendee, and also claimed and accepted from the vendee payment in money for that portion of them already disposed of. Held, that such acceptance of payment was not a ratification of the sale, or release of the vendor's right to rescind it and claim the remaining goods.

2. **Same—Evidence of Fraud—Intent—Other Fraudulent Transactions.**

   In an action between attaching creditors of a vendee, and a vendor who is claiming back the attached goods because of fraud in the purchase thereof by such vendee, evidence of other fraudulent purchases by the vendee from other parties about the same time is admissible to show fraudulent intent.

3. **Practice in Trial Court—Peremptory Challenges.**

   Upon a trial of the right of property between several attaching creditors upon one side, and a claimant of the property upon the other, such creditors, as constituting one party to the litigation, should be allowed only the number of peremptory challenges to which a single party is entitled.

APPEAL from Gregg. Tried below before Hon. FELIX J. McCORD.

*E. O. Harrell* and *R. B. Levy,* for appellants.—1. The interests of the several plaintiffs in this suit are not so nearly identical as to make them but one party to a suit in the sense in which that term is used in the statute, and each plaintiff was entitled to six peremptory challenges. 2 Sayles' Civ. Stats., art. 3034; Jones v. Ford, 60 Texas, 127; Hargrave v. Vaughan, 18 S. W. Rep., 595.

2. A sale made on false representations of the buyer as to his financial condition and solvency, can not be ratified in part and affirmed in part, but must be repudiated in whole or affirmed in whole, and Frank, Herman & Co., having proceeded to collect $750 of the purchase money of the goods with knowledge of the fraud thereby elected to affirm and did affirm the sale, by recognizing the existence of the contract and by receiving the money on the contract. And they could not thereafter be heard to say they had made no contract and could not rescind the sale. Herman on Estoppel, 1052; Joslyn v. Cowee, 52 N. Y., 90; Bridgeford v. Adams, 45 Ark., 136, 141; Ish v. Crane, 8 Ohio St., 520; Morris v. Hall, 41 Ala., 510; Bulkely v. Morgan, 46 Conn., 393; Adler v.

Fenton, 24 How., 407; Benj. on Sales, p. 580, note 19, 568; Farwell v. Myers, 59 Mich., 184; Allyn v. Willis, 65 Texas, 73; Cobb v. Hatfield, 46 N. Y., 533; Gould v. Cayuga Bank, 86 N. Y., 75; Schiffer v. Dietz, 83 N. Y., 364.

3. If Frank, Herman & Co. were induced to make the sale of the goods in controversy to B. F. Loyd on false representations made by the said Loyd at the time of the sale as to his financial condition and solvency, then upon the discovery of the fraud Frank, Herman & Co. had the right to rescind the sale and recover the goods sold; but if after they discovered that such statements were false and with full notice of the fraud of said Loyd, they treated the contract as still existing and proceeded to collect a part of the purchase money of the goods sold, they thereby affirmed the sale and forever lost the right to rescind the sale. Mansfield v. Trigg, 113 Mass., 350; Moore v. Brackett, 98 Mass., 205; 3 A. & E. Enc. L., p. 726, note 1; Kinney v. Kiernan, 49 N. Y., 165; Wheaton v. Baker, 14 Barb., 594; Powers v. Benedict, 88 N. Y., 605; Molla v. Tuska, 87 N. Y., 166; Herman on Estoppel, secs. 1039, 1040; Ryan v. Brant, 42 Ills., 78; Moriarity v. Stofferans, 89 Ills., 528; Estes v. Reynolds, 75 Mo., 563; Wright v. Zigler, 70 Ga., 501, 512; Farwell v. Meyers, 59 Mich., 184.

*DeGraffenried & Young* and *T. B. Stinchcomb*, for appellees.—1. The interests of the several plaintiffs in this suit are so nearly identical, as to make them but one party, in the sense in which that term is used in the statute, and all plaintiffs together were entitled only to six peremptory challenges. 2 Sayles' Civ. Stats., art. 3034; Hargrave v. Vaughn, 18 S. W. Rep., 695; Jones v. Ford, 60 Texas, 127.

2. In questions of fraud, any act of the defrauding party similar to the one in question, done at or about the same time, or when the same motive may reasonably be supposed to have existed, as that which is in issue, is admissible in evidence for the purpose of showing the intention of the defrauding party, or the quo animo of the party while making such transactions. Rowley v. Bigelow, 23 Am. Dec., 607; also 12 Pick, 607.

3. The mere receiving of a sum of money for goods, after knowledge of fraud, is not an affirmation of the sale unless it was received with an intention of allowing the original contract to stand, but if it was received in satisfaction of the goods disposed of the sale may be rescinded. Symns v. Benner, 31 Neb., 597; 48 N. W. Rep., 472; Schoonmaker v. Kelly, 42 Hun., 299; 3 White v. W. C. C., sec. 135; Heinze v. Marx, 23 S. W. Rep., 704; Morrison v. Adoue, 76 Texas, 255; Bank v. Bamberger, 77 Texas, 48; Tootle v. Bank, 52 N. W. Rep., 396; Boot and Shoe Co. v. Trentman, 34 Fed. Rep., 620; Able v. Lee, 6 Texas, 427; Ayers v. Harris, 64 Texas, 301.

WILLIAMS, ASSOCIATE JUSTICE.—One B. F. Lloyd bought from appellees goods of the value of $2,012.95, which were delivered to him, besides others which were stopped in transit, agreeing to pay $750 cash

on shipment, and the balance on credit. Before the arrival of all of the goods Lloyd failed, and his goods were attached by appellants. Appellees filed claimant's oath and bond for such of the goods attached as were sold to Lloyd by them, amounting, at the prices at which they were sold by them, to $1,242.25. A trial of the right of property ensued, resulting in verdict and judgment for the claimants, from which the attaching creditors appealed. Appellees, at the trial, asserted title to the property on the ground that Lloyd had obtained the goods by making to them false and fraudulent representations of his solvency and as to the value of his assets, and also with the fraudulent purpose of never paying for them; and appellees introduced evidence sufficient to prove both of these allegations. They also allege a conspiracy between Lloyd and other parties to fraudulently purchase the goods, and introduced evidence tending to prove it. Appellants alleged and introduced evidence tending to show that, after discovery of the fraud, appellees had affirmed the sale, and collected a part of the contract price of the goods. The facts as to this are briefly as follows: After Lloyd's failure, a member of appellees' firm went to Longview and identified those of the goods sold by them which remained in the attached stock, and ascertained that more than $750 worth had been disposed of by Lloyd. He determined to assert the title of the firm to the remainder and instructed his attorney to prepare the proper proceeding, and, to pay for those which had been sold, he took an order from Lloyd on one Parks, at Dallas, for $750, which was paid. The evidence is sufficient to show that this sum was not collected under the original contract of sale, but simply as payment for the value of the goods which Lloyd had disposed of and for which he was liable to appellees on a rescission of the sale. This is appellees' version of the transaction, which the jury must have found to be the true one, for upon this issue the court charged as follows:

"If you believe from the testimony that B. F. Lloyd purchased from Frank, Herman & Co. the goods set up in Frank, Herman & Co.'s claim, and if you further believe that B. F. Lloyd made a statement to Frank, Herman & Co. as to his solvency and financial condition, and if you further believe that Frank, Herman & Co. was influenced to sell said goods to B. F. Lloyd, and did sell to B. F. Lloyd the goods, and if you further find that such statements so made by B. F. Lloyd were materially false, and were fraudulently made by B. F. Lloyd to induce said Frank, Herman & Co. to part with said goods, then if you so find, then Frank, Herman & Co. had the right, when they discovered that the statement was false, to rescind the contract and proceed to recover the goods, and if they in this case did, as soon as they discovered that the statement was false, rescind the sale and brought suit to reclaim the goods, and if you further find that the goods claimed by them were the identical goods sold, then you will find for Frank, Herman & Co.

"If Frank, Herman & Co., through their agents, after they discovered that Lloyd's statement was false, came and examined the stock of goods, and discovered that Lloyd had disposed of part of their goods, and that

they did not release their right to reclaim the goods, and that they accepted the $750 only as a payment of the goods disposed of, and not as part payment of all the goods, then I charge you this would be a ratification of the sale, and you will find against Raby, Parks and others on this issue; but if the payment of $750 was accepted as part payment of the claim, without reference to what goods had been disposed of by Lloyd, then it would be a ratification of the sale, and you will find against Frank, Herman & Co."

Notwithstanding the fraud, the sale was not void, but the vendors had the right to avoid it, or to affirm and enforce it, as they might elect. But in rescinding, they had the right not only to retake the goods which remained in their reach, but to exact payment for those which had been disposed of by the vendee, and it follows that in collecting the money which they received for this purpose, they did not affirm the contract, but their acts, in taking the goods and the money, were consistent and were a disaffirmance of the sale.   Kinney v. Kiernan, 49 N. Y., 164; Powers v. Benedict, 88 N. Y., 605; Morford v. Peck, 46 Conn., 384.

The charge of the court was as favorable to appellants as, under the facts, they could demand.   The instructions contained in special charges 1 and 2 were involved in those given by the court.

Evidence that about the same time he practiced the fraud on appellees, Lloyd made like false representations to a number of other firms, and, upon them, obtained large quantities of goods, was admissible under the allegations in appellees' pleadings, as tending to show the existence of the intent not to pay for the goods, and the conspiracy alleged with other parties.   A letter which was read in evidence from B. F. White to Lloyd tended also to show the conspiracy alleged.   All of this evidence was admissible.

There was no error in the refusal to allow each of the attaching creditors six peremptory challenges.   They were identified with each other, and together constituted the parties on one side of the case, against appellees on the other.   There was no antagonism of interest between them, and they were properly to be viewed as one party.

Affirmed.

Delivered January 30, 1896.                    Affirmed.